**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Betty L. Powell, ) | No. CIV 11-310-TUC-LAB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Michael J. Astrue, Commissioner of ) Social Security, ) | |
| Defendant. ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73.

The claimant, Betty L. Powell, argues the Commissioner's decision denying benefits is flawed for three reasons: (1) the ALJ improperly determined Powell's disability onset date, (2) the ALJ incorrectly stated the date Powell was diagnosed with breast cancer, and (3) the ALJ incorrectly classified Powell's past work at Sears as a retail sales representative.

Having considered Powell's three allegations of error, the court finds the final decision of the Commissioner is supported by substantial evidence and free from legal error. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

PROCEDURAL HISTORY

On February 9, 2007, Powell protectively filed an application for disability insurance benefits and supplemental security income. (Tr. 20) She alleged disability beginning on December 31, 2001[1], due to high blood pressure, diabetes, and thyroid condition. (Tr. 187) Her claim was denied initially (Tr. 82-89) and upon reconsideration (Tr. 92-95). Powell requested review and appeared with counsel before Administrative Law Judge (ALJ) Lauren R. Mathon on February 3, 2010. (Tr. 20, 28) In her decision, dated February 12, 2010, the ALJ found Powell was disabled beginning June 1, 2009, but not before. (Tr. 27).

Powell appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-4); *see Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Powell subsequently filed this action appealing the Commissioner's final decision. (Doc. 1); *see* 20 C.F.R. § 422.210(a). She filed her opening brief on October 11, 2011. (Doc. 14). The Commissioner filed a responsive brief on November 10, 2011. (Doc. 15) Powell filed a reply on December 19, 2011. (Doc. 18)

Claimant's Work History and Medical History

Powell has worked at a number of jobs mostly in retail sales and food preparation. (Tr. 188) Between 1996 and 1998, she worked as a sales representative in a department store, Sears. (Tr. 188, 219) Between 1999 and 2002, she worked onboard ship as a steward/chief cook. (Tr. 188) She stopped working for the merchant marine in 2002 when she hurt her knee. (Tr. 54) She then worked sporadically in a series of jobs in retail sales and food preparation. (Tr. 62) Powell stopped working altogether in October of 2006 due to dizziness and other complications from her high blood pressure and diabetes. (Tr. 187)

In her application, Powell alleged disability starting on December 31, 2001, due to high blood pressure, diabetes, and thyroid condition. (Tr. 187) Later, she amended her disability start date to June 2, 2007, the date of her exam by Thomas McNalley, M.D. (Tr. 20, 280-84)

---

[1] This onset date was later amended to June 2, 2007. (Tr. 20)

- 2 -

The record contains treatment notes from Powell's treating physician, Chandar Bhimani, M.D. (Tr. 260-279) In March of 2004, Bhimani listed Powell's diagnoses as diabetes mellitus type II – moderate, hypertension – moderate, hypercholesteral – moderate, hypothyroidism – moderate. (Tr. 270) He found her current medical impairments would result in mild to moderate interference with her ability to do work. (Tr. 269, 270) These limitations, however, would last less than 90 days without medical treatment. (Tr. 271)

In June of 2007, Powell was examined by Thomas McNalley, M.D. (Tr. 280-84) McNalley diagnosed hypertension, "currently uncontrolled and untreated," diffuse joint pains, and diabetes. (Tr. 283) McNalley opined Powell could stand for six hours with breaks, sit without restriction, carry 25 pounds frequently and 25 pounds occasionally. (Tr. 283-84) She should avoid crouching and stooping and any other activity that involves the knee. (Tr. 284)

In June of 2007, the non-examining state agency physician, Gail Fromdahl, M.D., reviewed the medical record and completed a Physical Residual Functional Capacity Assessment. (Tr. 285-92) Fromdahl diagnosed essential hypertension and diabetes mellitus. (Tr. 78) She opined Powell could lift or carry 20 pounds occasionally and 25 pounds frequently. (Tr. 286) Powell could stand or walk for six hours in an eight-hour day, and sit for six hours in an eight-hour day. *Id*. She should only occasionally climb, kneel, or crawl. (Tr. 287)

In September of 2007, the non-examining state agency physician, Robert Hoskins, M.D., reviewed the medical record and affirmed Fromdahl's previous evaluation. (Tr. 80, 330)

In January of 2009, Powell was diagnosed with breast cancer. (Tr. 340) She underwent a partial mastectomy on June 1, 2009, and was prescribed follow-up radiation and hormonal treatment. (Tr. 425-26, 440-441) She underwent a lymph node biopsy on July 8, 2009. (Tr. 448)

The record contains a letter written by Powell's daughter, Kathleen Von Ogilvie, in November of 2009. (Tr. 247-48) Von Ogilvie states that her mother has been unable to work for the past six years due to her high blood pressure, diabetes, and thyroid disease. *Id*. She

1 further states that Powell had two surgeries and has undergone seven weeks of radiation therapy
2 for her breast cancer. *Id*.

3 The record also contains a letter from Andrea Busen, PAC and D. Frederick, M.D.[2] (Tr.
4 369) The letter states that Powell is unable to work "in any capacity" due to breast cancer,
5 diabetes, hypertension, hypothyroidism, and fatigue. *Id*.

6 On February 3, 2010, Powell appeared with counsel before ALJ Lauren Mathon. (Tr.
7 44) At the time of the hearing, Powell was 64 years old. (Tr. 47) She stopped school after the
8 eighth grade but holds a high school equivalency or GED. (Tr. 47)

9 Powell testified that she worked for three years at Sears greeting customers and acting
10 as a sales representative. (Tr. 63, 64, 65) At times, she was required to move boxes of clothing
11 and appliances weighing up to 50 pounds. (Tr. 73-74) She quit in 1999 to work as a cook in
12 the merchant marine. (Tr. 60, 64) In that job, she had to lift bags of meat and potatoes
13 weighing up to 50 pounds. (Tr. 65) She injured her knee and feet on the ship, which limits her
14 ability to stand and walk. (Tr. 54)

15 Powell stopped working altogether in April of 2006 due to dizziness caused by her
16 diabetes and high blood pressure. (Tr. 50, 51) She also had trouble standing and impaired
17 memory. (Tr. 49)

### CLAIM EVALUATION

20 Social Security Administration (SSA) regulations require that disability claims be
21 evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter
22 v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of
23 whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4),
24 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

---

[2] The letter is signed by Andrea Busen. The name, D. Frederick, M.D., is printed below Busen's signature.

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[3] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional

---

[3] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 5 -

1  requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d
2  1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based
3  on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a
4  valid basis for denying claims where they completely and accurately describe the claimant's
5  abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the
6  claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115
7  (9th Cir. 2006).

8  If the claimant has significant non-exertional limitations, the grids do not apply. *Penny
9  v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that
10 do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.
11 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-
12 exertional limitations prevent the claimant from performing the full range of work in any
13 exertional category, the ALJ must take the testimony of a vocational expert to deny the claim.
14 *Id.* at 1341.

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Powell "has not engaged in substantial gainful activity since the alleged onset date." (Tr. 22). At step two, she found that since December 31, 2001, Powell "has had the following severe impairments: diabetes, hypertension and hypothyroidism." (Tr. 20). Since June 1, 2009, Powell "has had the following severe impairments: diabetes, hypertension, hypothyroidism and left breast cancer." (Tr. 20-21) At step three, the ALJ found Powell's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 23).

The ALJ then analyzed Powell's residual functional capacity (RFC). (Tr. 23). She found that prior to June 1, 2009, Powell "had the residual functional capacity to perform light work . . . except claimant is limited in crouching and stooping or any activities that involve the

1  knee." (Tr. 23). Beginning June 1, 2009, Powell was restricted to less than the full range of
2  sedentary work. (Tr. 26).

3      At step four, the ALJ found that prior to June 1, 2009, Powell could perform her past
4  relevant work as a sales representative. (Tr. 26) Beginning June 1, 2009, Powell was unable
5  to perform any past relevant work. (Tr. 27) At step five, the ALJ found using the grids that
6  Powell was disabled beginning June 1, 2009. (Tr. 27).

8      STANDARD OF REVIEW

9      An individual is entitled to disability benefits if he or she demonstrates, through
10  medically acceptable clinical or laboratory standards, an inability to engage in substantial
11  gainful activity due to a physical or mental impairment that can be expected to last for a
12  continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A]
13  claimant will be found disabled only if the impairment is so severe that, considering age,
14  education, and work experience, that person cannot engage in any other kind of substantial
15  gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.
16  1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

17      The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),
18  1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is
19  not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).
20  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept
21  as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a
22  preponderance." *Id.*.

23      "Where evidence is susceptible to more than one rational interpretation, the ALJ's
24  decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider
25  the entire record as a whole and may not affirm simply by isolating a specific quantum of
26  supporting evidence." *Id.*

27      In evaluating evidence to determine whether a claimant is disabled, the opinion of a
28  treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.

1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789, 792-93 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if she decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

Powell argues the Commissioner's decision denying benefits is flawed for three reasons: (1) the ALJ improperly determined her disability onset date, (2) the ALJ incorrectly stated the

- 8 -

date she was diagnosed with breast cancer, and (3) the ALJ incorrectly determined her past work at Sears was as a sales representative.

First, Powell challenges the Commissioner's disability onset date. In this case, the ALJ found that Powell's diabetes, hypertension, hypothyroidism, and breast cancer combined to render her disabled. She chose as the disability onset date, the date Powell had her surgery and started her cancer treatment. Powell argues the ALJ should have adopted the onset date she proposed pursuant to Social Security Ruling (SSR) 83-20.

SSR 83-20 discusses how a disability onset date should be determined (assuming the Commissioner has already decided the claimant is disabled). If the disability has a "traumatic origin," the onset date will ordinarily be the date of the injury. SSR 83-20, 1983 WL 31249.

If the disability has a "nontraumatic" origin, the date should be determined based on factors such as the claimant's allegations, work history, and medical records. *Id*. The Rule cautions that "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Id*. In such a case, it may be necessary to infer the onset date from other sources of evidence. The Rule goes on to state that "[i]n determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available." *Id*.

In her brief, Powell argues the Commissioner's failure to adopt the onset date that she proposed is error quoting the language used in the "nontraumatic origin" section of SSR 83-20. The court does not agree. This is not a "nontraumatic origin" case.

In this case, the Commissioner found Powell was disabled due to a combination of factors: diabetes, hypertension, hypothyroidism, and breast cancer. While the first three of these factors could be characterized as progressive and nontraumatic, the fourth factor is different. Powell's breast cancer surgery and her subsequent treatment had a definite starting date – June 1, 2009. And it was this surgery and the associated medical treatment that the ALJ believed triggered Powell's disability. Accordingly, the ALJ adopted this date as the onset date of Powell's disability. Where the ALJ finds that the claimant's progressive ailments are not, by themselves, sufficient to establish disability and disability does not occur until a specific

1  surgery, the ALJ does not err by fixing the disability onset date in accordance with the date of
2  that surgery. The ALJ did not violate SSR 83-20 when she chose Powell's disability onset date.

3  In her second allegation of error, Powell argues the ALJ erred when she stated that
4  Powell became disabled when she was "diagnosed with breast cancer on June 1, 2009." (Doc.
5  14, p. 7) Powell maintains she was first diagnosed on January 20, 2009, by breast biopsy. (Tr.
6  340) Accordingly, she argues the ALJ should have found her disability onset date was January
7  20th, when she was first diagnosed, not June 1st. The court finds that while Powell correctly
8  states the date of her initial diagnosis, the ALJ did not commit error by giving June 1, 2009 as
9  the onset date of her disability.

10 The ALJ found that Powell was disabled as of June 1, 2009. (Tr. 26) On that date,
11 Powell had surgery to treat her breast cancer. (Tr. 336) A pathology sample of the tumor was
12 analyzed and a "final diagnosis" of "invasive lobular carcinoma, grade II" was provided by
13 Robert R. Klein, M.D. (Tr. 336) The ALJ cited to this report in support of her statement that
14 "[o]n June 1, 2009, claimant was diagnosed with an invasive left lobular carcinoma, grade II
15 after a left breast mastectomy." (Tr. 26)

16 When the ALJ stated that Powell became disabled when she was diagnosed on June 1,
17 2009, she meant that on this date Powell received a final diagnosis after her surgery and that the
18 surgery and associated pain and fatigue combined with her other ailments rendered her disabled.
19 (Tr. 26) The ALJ did not mean to imply that on this date Powell was first diagnosed by needle
20 biopsy.

21 The ALJ's onset date of June 1, 2009 is not error because it was on this date that Powell
22 experienced the pain and fatigue that the ALJ found would render her disabled when combined
23 with her other impairments. It was not the diagnosis that rendered Powell disabled, it was the
24 pain and fatigue associated with the surgery and treatment. And this started on June 1, 2009,
25 not January 20, 2009.

26 Finally, Powell argues the ALJ erred when she found her past relevant work at Sears was
27 as a "sales representative." (Doc. 14, p. 7-11)

28

- 10 -

1    Powell described this job in her application as: "stand/sale/order if needed like under
2 stuff 4 lady's/ help people." (Tr. 219) At the hearing, Powell further described her job at Sears.
3 (Tr. 63) The ALJ asked, "You were selling?" And Powell answered, "Yes, your honor." *Id*.
4 The ALJ asked, "You were a sales clerk?" And Powell answered, "Yes." *Id*. Powell further
5 stated: "I was helping customers find what they needed." (Tr. 64) The ALJ asked, "Was that
6 job where you walked around the store and stood behind counters?" (Tr. 64) Powell answered,
7 "Yes, or I would greet the customer and ask if they needed any help." (Tr. 64) Powell explained
8 the job was called, "Sales rep." (Tr. 65) Upon questioning by counsel, Powell further explained
9 that her job also required taking stock out of boxes, sorting it, and putting it where it belonged.
10 (Tr. 73) Sometimes she would work outside the clothing department, stocking appliances. (Tr.
11 73) She explained that some of those boxes weighed up to 50 pounds. (Tr. 74)

12    In her decision, the ALJ concluded that Powell's Sears job consisted mostly of standing
13 and walking, assisting customers, and maintaining the stock of the store. (Tr. 26) She found
14 the job best described in the Dictionary of Occupational Titles (DOT) as "sales person in
15 general merchandise (279.357-054), fashion accessories (261.357-066), ladies' wear (261.357-
16 066) and household appliances (270.357-034)" (Tr. 26) These jobs are classified as light work
17 as they are usually performed. The ALJ then found at step four of the disability analysis that
18 Powell could perform this past relevant work prior to June 1, 2009, because at that time she
19 retained the ability to do light work.

20    The Dictionary of Occupational Titles describes a "Salesperson, General Merchandise"
21 as one who "[s]ells variety of commodities in sales establishment, performing duties as
22 described under Salesperson (retail trade; wholesale tr.)." DOT, code 279.357-054. The job of
23 Salesperson, Women's Apparel and Accessories entails selling women's clothing and
24 accessories and performing other duties described under Salesperson (retail trade; wholesale tr.).
25 DOT, code 261.357-066. The job of Salesperson, Household Appliances entails selling "radios,
26 television sets, and other household appliances to customers" and performing other duties as
27 described under Salesperson (retail trade; wholesale tr.) DOT, code 270.357-034. The job
28 "Salespersons, Retail" entails tasks such as:

- 11 -

      1. Prepares sales slip or sales contract.

      2. Computes sales price of merchandise.

      3. Describes merchandise and explains use, operation, and care of merchandise to customers.

      4. Sells or arranges for delivery, insurance, financing, or service contracts for merchandise.

      5. Totals purchases, receives payment, makes change, or processes credit transaction.

      6. *Recommends, selects, and obtains merchandise based on customer needs and desires*.

      7. Demonstrates use or operation of merchandise.

      8. *Greets customer*.

      9. Fits or assists customers in trying on merchandise.

      10. Estimates quantity and cost of merchandise required, such as paint or floor covering.

      11. *Tickets, arranges, and displays merchandise to promote sales*.

      12. Maintains records related to sales.

      13. Estimates and quotes trade-in allowances.

      14. Estimates cost of repair or alteration of merchandise.

      15. Wraps merchandise.

      16. Rents merchandise to customers.

      17. *Inventories stock*.

      18. *Requisitions new stock*.

      19. Cleans shelves, counters, and tables

DOT, code 49011, Salespersons, Retail (emphasis added).

      In this case, Powell described her job at Sears as "stand/sale/order if needed like under stuff 4 lady's/ help people." (Tr. 219) She said she greeted people and helped them find what they needed. As the ALJ noted, Powell said her job entailed "mostly standing and walking assisting customers and maintaining the stock of the store." (Tr. 26) These tasks are listed in the DOT as among those performed by one in retail sales. Accordingly, there is substantial

- 12 -

1 evidence supporting the ALJ's finding that Powell's job at Sears should be classified as a "sales person in general merchandise (279.357-054), fashion accessories (261.357-066), ladies' wear (261.357-066) and household appliances (270.357-034)." (Tr. 26); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

Powell argues that other evidence weighs against finding that her prior work at Sears was as a sale person. She notes that she had to lift stock weighing up to 50 pounds, which exceeds the weight limit associated with a normal sales person's job. (Doc. 14, p. 10) She argues a sales person needs to have knowledge of mathematics and English whereas her knowledge of these things is poor. *Id.* Because of this evidence, Powell argues her past work would be better characterized as stock clerk (299.367-014) which is classified as heavy work. (Doc. 18, p. 5)

The court finds that while Powell raises legitimate points, her argument fails to allow for the court's deferential standard of review. It does not matter if the Commissioner's finding is against the weight of the evidence. It only matters if the Commissioner's finding is supported by *substantial* evidence. And, here it is. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("Substantial evidence is more than a mere scintilla but less than a preponderance."). The court finds no error in the ALJ's characterization of Powell's job at Sears as a retail salesperson. Accordingly,

IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED. The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 31st day of August, 2012.



Leslie A. Bowman
United States Magistrate Judge